# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

DEMAURIO STEWART,

    Plaintiff(s),

v.

DOLLAR LOAN CENTER, LLC, et al.,

    Defendant(s).

2:13-CV-182 JCM (PAL)

**ORDER**

Presently before the court is defendant Dollar Loan Center, LLC's motion to enforce alternative dispute resolution, or, in the alternative, motion for summary judgment. (Doc. # 13). Plaintiff DeMaurio Stewart filed a response in opposition (doc. # 16), and defendant filed a reply (doc. # 19).

Additionally, the court permitted supplemental briefing on this issue, and the defendant filed a supplement. (Doc. # 26). Plaintiff filed a response to the supplement (doc. # 27), and the defendant filed a reply (doc. # 28).

**I.    Background**

Plaintiff and defendant entered into four separate installment loan agreements with an accompanying disclosure statement. The terms of both the loan agreement and the disclosure statement for each of the four loans were substantially similar. Two particular clauses and/or terms are relevant to this case and causes of action. First, the agreement and disclosure statement plainly

**James C. Mahan**
**U.S. District Judge**

1  state that plaintiff consents to being contacted at work.  Second, the agreements and disclosure
2  statements contain a broad agreement to arbitrate any disputes arising under the loan.

3  On November 21, 2011, plaintiff entered into loan number 849889 with defendant.  The
4  principal loan amount was $1,400.  Defendant contacted plaintiff at work twice, never reached
5  plaintiff, left a message with the operator, and plaintiff never returned the call.

6  On April 24, 2012, plaintiff entered into loan number 927318 with defendant.  The principal
7  loan amount was $1,600.  Defendant never contacted plaintiff at work in connection with this loan.

8  On May 16, 2012, plaintiff entered into loan number 929989 with defendant.  The principal
9  loan amount was $1,600.  Defendant never contacted plaintiff at work in connection with this loan.

10  On August 13, 2012, plaintiff entered into loan number 990663 with defendant.  The
11  principal loan amount is $1,799.99.  Defendant contacted plaintiff at work in connection with this
12  loan on nine occasions.  On the first eight calls, defendant either left a message or someone informed
13  defendant that plaintiff was busy.  Defendant never spoke with plaintiff.  On the ninth phone call,
14  defendant was advised that plaintiff's employer, the Federal Aviation Administration, prohibited
15  telephone calls at plaintiff's place of employment.  Defendant then stopped contacting plaintiff at
16  work.

17  Plaintiff failed to repay the final loan, loan number 990663.  Plaintiff filed a voluntary
18  petition for bankruptcy protection in bankruptcy court.  Plaintiff then filed the instant lawsuit against
19  defendant for alleged violations of NRS chapter 604A and 15 U.S.C. § 1692 and invasion of privacy
20  when attempting to collect the debts.  Defendant filed the instant motion to enforce arbitration of the
21  claims and debt.

22  **II.    Legal Standard**

23  Section 2 provides of the Federal Arbitration Act ("FAA") that:

25  A written provision in . . . a contract evidencing a transaction involving commerce to settle
    by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be
26  valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for
    the revocation of any contract.

**James C. Mahan**
**U.S. District Judge**

- 2 -

1 | 9 U.S.C. § 2. "In enacting § 2 of the federal Act, Congress declared a national policy favoring
2 | arbitration and withdrew the power of the states to require a judicial forum for the resolution of
3 | claims which the contracting parties agreed to resolve by arbitration." *Southland Corp. v. Keating*,
4 | 465 U.S. 1, 10, (1984). Courts shall place arbitration agreements "upon the same footing as other
5 | contracts." *Volt Info. Sciences, Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468,
6 | 478 (1989).

7 | Additionally, § 3 of the FAA permits a court to stay an action while the parties proceed to
8 | arbitration. 9 U.S.C § 3. "Despite the mandatory language, the Ninth Circuit has interpreted this
9 | provision to allow dismissal of the action in certain circumstances." *Germaine Music v. Universal
10 | Songs of Polygram*, 275 F.Supp.2d 1288, 1299 (D. Nev. 2003).

11 | Finally, § 4 of the FAA states that "upon being satisfied that the making of the agreement for
12 | arbitration or the failure to comply therewith is not in issue, the court shall make an order directing
13 | the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.

14 | **III. Discussion**

15 | The defendant argues that the plaintiff entered into binding arbitration agreements when
16 | plaintiff entered into the loan transaction agreements; therefore, the parties must first arbitrate before
17 | filing a lawsuit. Defendant further argues that because plaintiff voluntarily entered into these
18 | agreements, and because plaintiff understood all the terms in the agreements when entering into the
19 | loan agreements, that defendant is entitled to dismissal of the action without prejudice.

20 | Two terms of the loan agreements are relevant. The first is the clause permitting defendant
21 | to call plaintiff in connection with the loan. The clause is identical in each of the four loans. That
22 | clause reads:

> **Telephone Calls.** We call our customers from time to time to provide live or pre-recorded messages about the due dates, collection matters and other information about your loans with us. These messages may be played automatically when the telephone is answered, whether answered by you or someone else. They may also be recorded by your answering machine or voice mail. ***You give us your consent to call any telephone number you give us, even if the number is a work number or cell number,*** and even if you are charged for this call . . . . You agree that we will not be liable to you for any calls or messages under this paragraph.

1  (Doc. # 13, Exs. A, D, E, and F) (emphasis in original).

2  Plaintiff argues that defendant's allegedly harassing phone calls violate certain state and federal laws. Defendant responds that, even if that were true, plaintiff must arbitrate those claims because the claims stem from the loans or from defendant's attempt to collect the loans.

The second relevant clause from the loan agreements are the clauses regarding the agreement to arbitrate. The arbitration clause is broad, detailed, and reader-friendly. They state in relevant part:

> **Agreement to Arbitrate.** You and we each agree that neither of us will start nor participate in any lawsuit to resolve a Claim against the other. Instead, you and we agree to follow the procedures for arbitrating disputes as described below. By agreeing to arbitration, you are waiving your right to bring, join or participate in a class action lawsuit against us.
>
> **What is Arbitration?** Arbitration is a procedure used to resolve disputes. In an arbitration, a professionally trained, neutral, third party arbitrator holds a hearing. The hearing is less formal than a trial in court. Each party has the opportunity to tell his or her side of the dispute. The arbitrator will review each party's case and make a decision. The decision is binding on the parties.
>
> . . .
>
> **What is a "Claim?"** A "Claim" includes any and all claims, disputes or controversies that arise under common law, federal or state statute or regulation or otherwise, and that we our servicers or agents have against you or that you have against us, our affiliates, servicers, agents, directors, officers and employees. "Claims" also include . . . our collection of any loan.

(Doc. # 13, Ex. D).[1] Additionally, the loan agreement has sections stating in specific detail all of the following: (1) what to do if the person receiving the loan has a "claim"; (2) what rules apply to arbitration; (3) what kind of hearing will take place; (4) what arbitrators can and will decide; (5) the law that will apply; and, (6) an opt out provision.

The court finds that the loan agreements clearly provide that either party must arbitrate before filing a lawsuit. The arbitration agreement in these contracts are the exact types of arbitration agreements that Congress sought to enforce when it passed the FAA. Additionally, arbitration "respond[s] to the wishes of the parties more flexibly and expeditiously than the federal courts." *Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 998 (9th Cir. 2003); *see Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985) (noting "the

---

[1] Additionally, loan number 849889 also required mediation and then arbitration.

James C. Mahan
U.S. District Judge

- 4 -

1  simplicity, informality, and expedition of arbitration"). Plaintiff clearly signed every loan transaction
2  with the arbitration agreement and knew of the arbitration agreement accompanying each loan
3  agreement.

4      Plaintiff argues that defendant's evidence in support of its motion (the loan transactions and
5  the affidavits corroborating the affidavits) is improper, that the arbitration clause does not cover the
6  causes of action in the complaint, that contractual arbitration agreements do not cover unrelated or
7  independent torts, and that the arbitration clause is unconscionable for varying reasons. The court
8  agrees with defendant's characterizations that plaintiff's arguments are misrepresentations of the
9  contract language and frivolous evidentiary objections. The court finds that defendant's evidence
10 is properly authenticated, that plaintiff knowingly consented to the plain language in the arbitration
11 agreement, and that all of plaintiff's causes of action are governed by the arbitration agreement.[2]

12     Finally, this court may dismiss the action without prejudice instead of staying the action
13 while the arbitration proceeds. *See Germaine Music*, 275 F.Supp.2d at 1299 (holding that dismissal
14 without prejudice was proper because plaintiff "signed a valid arbitration agreement and all of his
15 claims fall under the scope of that agreement"). In this case, all of plaintiff's claims are covered by
16 the arbitration agreement because they stem from defendant's collection of the loan. Plaintiff must
17 arbitrate his claims before filing a lawsuit under the facts of this case.

18     Accordingly,

19     IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendant's motion to
20 enforce alternative dispute resolution agreement, or, in the alternative, motion for summary judgment
21 (doc. # 13) be, and the same hereby, is GRANTED.

22 . . .

23

---

[2] The court finds four of plaintiff's arguments particularly unavailing. First, the opt-out provision clearly provides for either party to opt out of the arbitration agreement within three days of the signing of the contact, not an opt-out at any time as argued by plaintiff. Second, plaintiff (and plaintiff's counsel) argues that the arbitration agreement is unconscionable. However, these exact parties signed an arbitration agreement not unlike the one in this case regarding their relationship in plaintiff's bankruptcy proceeding. Third, the court finds that plaintiff's assertion that his employer, the Federal Aviation Administration, changed its phone number to be inaccurate. Fourth, the court notes that the complaint focuses on defendant's alleged excessive phone calls to plaintiff's place of employment. However, the response in opposition to the instant motion shifts the focus to defendant's alleged (though unsupported by evidence) excessive phone calls to plaintiff's family, friends, and cell phone.

**James C. Mahan**
**U.S. District Judge**

- 5 -

IT IS FURTHER ORDERED that the complaint is dismissed without prejudice because the plaintiff must first comply with the terms of the relevant arbitration agreements. The clerk of the court shall enter judgment and close the case.

DATED July 10, 2013.

*/s/ James C. Mahan*
_____
**UNITED STATES DISTRICT JUDGE**